## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE

| | |
|---|---|
| MARCEL WHITE <br> ██████████ <br><br>     Plaintiff, <br><br> vs. <br><br> CITY OF JACKSONVILLE <br> 117 W. Duval Street, Ste. 480 <br> General Counsel <br> Jacksonville, Florida 32202 <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CASE NO.: 3:14-CV-552-J-32JBT

### COMPLAINT
(Title VII – Race Discrimination, Retaliation & Hostile Work Environment; Equal
Protection Based on Race, Color, *Florida Constitution Article I, § 2*;
Discrimination Based on Race, Color, *Fla. Stat. § 760. 10.*)

### JURY DEMAND ENDORSED HEREON

1.  This is a case of race discrimination, retaliation and hostile work environment brought by
    an African-American firefighter Fire Prevention Bureau of the Jacksonville Fire &
    Rescue Department ("JFRD") was who subject to investigation based on knowingly false
    allegations of misconduct that were ultimately found to be without merit.  Nonetheless,
    JFRD removed Plaintiff from his position and the chance advancement with the Fire
    Prevention Bureau, causing him loss of opportunities and monies to which he was
    otherwise entitled.

2.  Plaintiff Marcel White is an African-American individual who resides in Duval County, Florida.

3.  Defendant is the Consolidated City of Jacksonville located in Duval County, Florida.

4.  Plaintiff filed EEOC charges previously against the City of Jacksonville for race discrimination; those charges culminated into federal cases in the Middle District of Florida, which remain pending to this day, including *Smith v. City of Jacksonville* (on promotional discrimination), and the consolidated case of U.*S. Department of Justice v. Jacksonville* (on promotional discrimination).

5.  Plaintiff was assigned to the Fire Inspection Bureau ("FPB") of the JFRD from July 2002 to 2012.

6.  The FPB division works under the authority of the JFRD-appointed Fire Marshall.

7.  As part of their duties, Fire Inspectors are permitted to use their discretion in their performance their jobs for inspections when citing an entity inspected for code infractions, unless the code violation involves suppression systems, fire alarms, or other life-threatening situations.

8.  Fire extinguisher inspections fall with the discretionary realm of all Fire Inspectors.

9.  In practice and policy, Fire Inspectors often use their discretionary judgment for a business that has a fire extinguisher that is outdated or requires repair; they can either be issued a citation outright or be allowed to timely correct the situation.

10. In general practice by FPB inspectors, noncompliant businesses are allowed to remedy fire extinguisher violation via the receipt of current documentation from of a fire extinguisher company to prove that the business has complied.

2

11. Plaintiff served as a Fire Inspector without incident or discipline from 2002 through mid-2011; in 2011, however, he became singled out for disciplinary write-ups for conduct that was the normal practice of FPB.

12. The disciplinary write-ups continued into 2012, and were lodged by his supervisor, Kevin Jones ("Jones"), who was a Captain at FPB and the Officer in Charge.

13. On April 10, 2012, JRFD removed him from his position as Fire Inspector due to the improper and baseless allegations of misconduct made by Jones, including alleged "falsification of documents," "conduct unbecoming of a public employee," and "gross negligence," which related to fire extinguisher inspections in Plaintiffs' district.

14. The charges made by Jones were formal in nature and in May 2012, the charges were referred to the State Fire Marshall Office.

15. On June 7, 2012, State Fire Marshalls Office advised Plaintiff that it opened an investigation upon Plaintiff based the allegations of JFRD personnel.

16. The State Fire Marshall Office completed in investigation November 2012 with a determination that Plaintiff that had not engaged in any misconduct and that the allegations by Jones were baseless.

17. Even though JFRD was made aware of the investigation results, no one notified Plaintiff; they knowingly continued to keep him from his rightful position.

18. During this time, JFRD also started its own internal investigation; however, that investigation seems to have petered out.

19. While the investigation was ongoing, Randy Wyse, the Union president, and Chief Wilson suggested that Plaintiff "surrender" his inspector certification to make the charges

"go away"; Plaintiff refused, as he would have essentially been out of his rightful position.

20. At the time he began to be disciplined by Jones, Plaintiff and Jones were both candidates for the vacant position – involving a promotion – of JFRD Chief of Fire Prevention - Fire Marshall.

21. Plaintiff was more qualified for the position than Jones due to his tenure and experience.

22. Jones, also an African-American, was promoted to the position of Fire Marshall at JFRD, over Plaintiff; both Jones and Plaintiff had applied for the Fire Marshall position in 2012.

23. Although he has only held the Fire Marshall position for several months, Jones is currently under investigation for using the word "nigger" in a general meeting with JFRD personnel about a community event.

24. Complaints were made within JFRD and the issue was also the subject of media attention.

25. This event occurred during the 90-day filing period after the EEOC issued its Right to Sue Letter to Plaintiff.

26. In 2012, Plaintiff applied to the Fire Marshall's position, was vacant; Plaintiff was qualified to hold that position.

27. Because of the false allegations and subsequent suspension of Plaintiff, though resolved in his favor, his chances for promotion to Fire Marshall were impaired.

28. By Defendant's various acts and omissions, Plaintiff has suffered loss of opportunity and compensation that entitles him to recovery in the form of economic damages under the federal law.

29. By Defendant's various acts and omissions, Plaintiff has suffered humiliation, embarrassment and general loss of enjoyment of life that entitles him to recovery of general compensatory damages.

30.  Plaintiff also is entitled to recovery of attorney fees, expenses and costs incurred in the prosecution of this action.

### JURISDICTIONAL STATEMENT

31.  This Court has original jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1331, federal question, and 42 U.S.C. § 2000-e, et seq. This Court also has supplemental jurisdiction over state claims by Plaintiff via 28 U.S.C. § 1367.

32. Plaintiff has timely filed his Complaint within 90 days of receipt of his Right to Sue Letter from the EEOC.

### COUNT I
### Retaliation and Retaliatory Harassment/Hostile Work Environment

33.  Plaintiff incorporates the averments in this Complaint from paragraphs 1-31, as if fully rewritten herein.

34. Defendant's acts and omissions towards Plaintiff constitute Retaliation and Harassment in violation of 42 U.S.C. § 2000-e, et seq. and Florida state laws.

### COUNT II
### Race Discrimination

35.  Plaintiff incorporates the averments in this Complaint from paragraphs 1-31, as if fully rewritten herein.

36. Defendant's acts and omissions towards Plaintiff constitute Race Discrimination in violation of 42 U.S.C. § 2000-e, et seq. and Florida state laws.

1.    WHEREFORE, Plaintiff prays this Court grant him judgment against the on all of his enumerated claims, and requests the following relief:

    a.   Back pay for Plaintiff from the date of violation through the date of judgment;

    b.   Seniority adjustment of in-grade seniority from the date the Fire Marshall position was filled;

    c.   Front pay for any and all favorable judgments from the date of judgment forward;

    d.   General compensatory damages exclusive of economic damages, in an amount to be determined at trial under applicable statutes allowing such damages, including 42 U.S.C. § 1981a and any other statutory or common law provisions for such damages.

    e.   Pre-judgment and post-judgment interest;

    f.   Reasonable attorneys fees, costs, expenses, and expert witness fees, costs and expenses under 42 U.S.C. § 1988, 29 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and any other statutory or common law allowing for same;

    g.   Any other relief this Court deems necessary and just.

Respectfully submitted,

Marcel White
6042 Ribault Road
Jacksonville, Florida 32209
Phone: 904-3381285
marcel.white@ iCloud.com
*PRO SE PLAINTIFF*

6

## JURY DEMAND

Plaintiff demands a trial by jury for each and every count/claim permitted under the law,

Marcel White